(October 19, 1967)

SHIRLEY ARSHANSKY et al., Appellants, v. ROYAL CONCOURSE CO., INC., Doing Business as ROYAL HOSPITAL, et al., Respondents

Concur — Eager, J. P., Capozzoli, Rabin and Witmer, JJ.; McGivern, J., dissents in the following memoandum: I dissent and would affirm. Contrary to the views of the majority anent the limited role of Dr. Resnick, I find nothing in the record to support a conclusion other than he referred the plaintiff to Dr. Cheifetz who was a specialist in surgical podiatry. And it was Dr. Cheifetz alone who decided that an operation was necessary, following a diagnostic examination in which Dr. Resnick, the referring physician, played no part. Dr. Cheifetz alone performed the surgery. True, Dr. Resnick was present physically; he did apparently render some manual and mechanical assistance. However, the only explanation in the record indicates Dr. Resnick was there solely in order to acquire knowledge. Between the two physicians, there was neither partnership, nor employment nor agency, not even of the barest sort. As was said in *Graddy* v. *New York Med. Coll.* (19 A D 2d 426, 429), cited in the majority opinion: " But referral of a patient by one physician, to another competent physician, absent partnership, employment, or agency, upon abundant authority does not impose liability on the referring physician." Further, the only testimony in the record on the subject of section 7001 (subd. 2, par. c) of the Education Law, was elicited from Dr. Cheifetz. Called by the plaintiff, he stated as an operating podiatrist, that the operation was classified as " minor ". Nowhere is this disputed. Noteworthy is that even section 7001 excepts " operations for minor deformities of mechanical and functional nature". Even if, *arguendo,* the operation was technically not countenanced by the statute, this would not heighten the implication of malpractice, absent a demonstration of a nexus between the alleged unauthorized act and some ill effects. Dr. Root, called by the plaintiff for expert opinion, was an *orthopedic* specialist who examined plaintiff's feet on only one occasion, in 1966, some five years after the questioned operation. In the formulation of his expert opinion he neither took X rays himself nor did he have the benefit of viewing any X rays of her feet taken immediately or shortly before the operation. The only X rays he had seen were taken in 1958, some three years prior to the operation. In the first instance, he opined that there was a deviation from the accepted medical practice of an *orthopedic* specialist in the removal of the head of the third metatarsal bone of the patient's foot. But on cross-examination, he tergiversated. He then admitted that under some circumstances excision of the metatarsal head was not improper, that such excision was a matter for the operating surgeon's judgment and would not constitute malpractice. Moreover, neither the clinical diagnosis made by Dr. Cheifetz nor the visual view of the operative site observed by him supports any suggestion that he made an error of judgment when he proceeded as he did. And even if an error of judgment ensued, on cases both ancient and modern, this alone would not sustain a further conclusion of malpractice. (*Pike* v. *Honsinger,* 155 N. Y. 201, 210.) Dr. Root also was critical of the use of hydrocortisone as an agent that would prevent

healing. But on cross-examination, he stated a normal operation of the type under consideration required from three to six months of post-operative recovery. Yet the plaintiff herein resumed normal walking in three months. And she was a chronic and inveterate foot-sufferer and complainer, who admittedly had "bad feet" as long as she could remember, at least 30 or 40 years. If this be "malpractice", it eludes me.